FRANCES THELMA KELLEY, et al., Plaintiff-Appellants, *v.* KOKUA SALES AND SUPPLY, LTD., Defendant, OAHU TURF & SPRINKLER COMPANY, LTD., et al., Defendants-Appellees

NO. 5491

MARCH 7, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA AND MENOR, JJ., AND CIRCUIT JUDGE LANHAM ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal by the plaintiffs (appellants). In an action for damages for negligence brought by the plaintiffs, the trial court rendered summary judgments in favor of the defendants (appellees) and against the appellants on the issue of liability. We affirm.

The question for resolution is whether the trial court erred in holding, as a matter of law:

That the appellees owed no duty to refrain from the negligent infliction of serious mental harm to appellants' decedent (Theodore Richard Kelley; herein Mr. Kelley).

Appellants in this action are the temporary administrator of the estate of Mr. Kelley, the widow, and the children of Mr. Kelley.

The appellees are: Oahu Turf & Sprinkler Company, the company that owned and operated the truck hereinafter mentioned; Erling W. Hedemann, Jr., and Lonnie Williams, principals in Koolau Nursery & Landscaping; International Harvester Company, manufacturer of the truck involved; Hawaiian Equipment Company and Castle & Cooke, Inc., who leased the trailer hereinafter mentioned to Oahu Turf & Sprinkler Company; George Kenney, mechanic for the truck; Ian Tekare, temporary administrator of the estate of Anthony Tekare, deceased; George K. Hirata, dba Standard Auto Service, who inspected the truck involved and issued a safety sticker for it; City and County of Honolulu and State of Hawaii, who granted the driver of the truck a license to operate the kind of truck involved.

On August 3, 1971, one Anthony Tekare was driving an International Harvester truck and trailer and proceeding in a Honolulu direction on Likelike Highway from the Wilson Tunnel, located in Honolulu, Hawaii. The truck experienced

a failure of its braking system and Tekare was unable to halt the speeding vehicle. The truck then collided with a vehicle occupied by Frances M. Thomas and her children, Kailani Thomas and Kelly Thomas. As a result of the collision Frances M. Thomas was killed, Kailani Thomas was critically injured and died thereafter, and Kelly Thomas was seriously injured. Mr. Tekare, who was an employee of certain of the appellees, also died as a result of the collision.

At the time of the accident Mr. Kelley resided in California. Some time between 8:30 and 9:00 p.m. California time on the evening of August 3, 1971, Mr. Kelley's daughter, Laura, called Mr. Kelley by phone from Honolulu and informed him of the accident and the resulting deaths of his daughter, Frances, and his granddaughter, Kailani, and the critical injuries to his other granddaughter, Kelly. Shocked and grieved, he then informed his wife of the tragedy and she became hysterical. Mr. Kelley had planned to take her to a hospital for a sedative, however, he decided first to inform his brothers and sisters of the tragedy. He called his brother-in-law, Mr. Pass, and requested of Mr. Pass to purchase plane tickets to Honolulu for Mr. Kelley and his wife. During the phone conversation, Mr. Kelley complained of chest pains and asked Mr. Pass to come over as quickly as possible. Mr. Kelley apparently died immediately after his conversation with Mr. Pass. Mrs. Kelley discovered him slumped over the telephone and he was pronounced dead upon arrival at the hospital. The cause of death was established as a heart attack.

On the above stated facts, the appellees moved for summary judgments stating that even if their negligence contributed to the traffic accident, as a matter of law, they did not owe a duty of care to Mr. Kelley and thus, not liable.

The appellees have also questioned whether Hawaii law or California law would be applicable herein.

Appellee City and County of Honolulu in addition contended that the six months' notice provision of Section 12-106 of the Charter of the City and County of Honolulu nullifies appellants' claim against the City and County.

DUTY OF CARE

In order to determine whether or not duty herein exists, it is helpful to note the following statement:

> [I]t should be recognized that "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.

W. PROSSER, LAW OF TORTS § 53 at 325-26 (4th ed. 1971). Therefore, in determining whether or not a duty is owed by the appellees herein, we must weigh the considerations of policy which favor the appellants' recovery against those which favor limiting the appellees' liability.

It is well established, in this jurisdiction, that one has a duty to refrain (duty of care) from the negligent infliction of serious mental distress upon another. *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970). This court has further concluded, in *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758 (1974), that in connection with such a duty, relief for the plaintiff exists regardless of the absence of physical impact and resulting physical injury on the plaintiff and the absence of blood relationship between the victim and plaintiff.

In both *Rodrigues* and *Leong, supra,* this court, after weighing the various considerations in favor of the plaintiffs and defendants, concluded that the scale of justice tipped in favor of the plaintiffs. In *Rodrigues, supra,* the plaintiff was a property owner whose home was flooded resulting in damages to and loss of property. In *Leong, supra,* the plaintiff was a ten year old child who crossed a street in the company of an old woman, of no blood relation but whom he loved dearly, having lived with her for several months. While crossing the street the woman was killed.

In both mentioned cases, this court adhered to the principle that where the serious mental distress to the plaintiff was a reasonably foreseeable consequence of the defendant's negligent act, the defendant is liable.

However, while this duty exists, the problem of the delineation of the scope of the duty (the question as to which particular plaintiffs, proximate-wise to the scene of the accident, is the duty owed) remains for resolution.

208

In connection with this question we are immediately confronted with our following statement in *Leong, supra,* 55 Haw. at 410, 520 P.2d at 765-66:

> The courts in *Dillon, D'Ambra* and *Boardman* tested the defendant's duty to the plaintiff on foreseeability standards rather than a proximate cause standard. Hence their criteria, the *proximity of the plaintiff-witness to the accident, the manner in which he witnessed it or learned of it,* his relationship to the victim and the *foreseeability of his* and *the* victim's *presence* to the defendant *should not be employed* by a *trial court to bar recovery* but should at most be indicative of the degree of mental stress suffered. Just as recovery should not be granted to a plaintiff who was standing within the zone of danger but denied to one standing several feet away, it should not be contingent upon the defendant's actual knowledge of plaintiff's presence. Like the court in *Dillon v. Legg, supra* [68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968)], we cannot doubt that the plaintiff would suffer some degree of shock when he witnessed his foster grandmother being killed as he stood several feet away. Whether the degree of stress engendered by the circumstances of this case is beyond the amount of stress with which a reasonable man can be expected to cope is a question for the trial court. (Emphasis added.)

The quoted paragraph could very well be construed to mean that the appellees owe a duty of care from the negligent infliction of serious mental distress upon a person located in any part of the world.

In both *Rodrigues* and *Leong, supra,* however, we concluded that the liability of the defendants therein was limited because a claim for relief was allowed only for serious mental distress, and not merely for minor mental distress.

We believe that, in the factual context of both said cases, the above conclusion that the defendants' liability was limited was correct. However, in the factual context of the instant case, we are of the opinion that merely requiring the proof of serious mental distress, rather than minor mental distress, does not realistically and reasonably limit the liability of the appellees.

Without a reasonable and proper limitation of the scope of the duty of care owed by appellees, appellees would be confronted with an unmanageable, unbearable and totally unpredictable liability.

As stated in W. PROSSER, LAW OF TORTS § 54 at 334 (4th ed. 1971):

It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one man were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as his friends.

. . .

Thus, notwithstanding our sympathies for the appellants for their loss and for the suffering of and death of Mr. Kelley, a reevaluation of the various considerations pertinent to the question of an untrammeled liability of the appellees leads this court to conclude, as a matter of law, that the appellees did not owe a duty to refrain (duty of care) from the negligent infliction of serious mental distress upon Mr. Kelley.

Stated in a different terminology, but reaching the same conclusion as above, we hold that the appellees could not reasonably foresee the consequences to Mr. Kelley. Clearly, Mr. Kelley's location from the scene of the accident was too remote.

We hold that the duty of care enunciated in *Rodrigues* and *Leong, supra,* applies to plaintiffs meeting the standards stated in said cases, and who were located within a reasonable distance from the scene of the accident.

### APPLICABLE LAW

We further conclude, based on the facts of the case, that the proper law applicable herein is Hawaii law.

The additional contention of appellee, City and County of Honolulu, is governed by *Salavea v. City and County*, 55 Haw. 216, 517 P.2d 51 (1973).

*Alan M. Goda (Frank D. Padgett* with him on the briefs; *Padgett, Greeley, Marumoto & Steiner* of counsel) for plaintiffs-appellants.

*Edmund Burke (Conroy, Hamilton, Gibson, Nickelsen & Rush* of counsel; *Ronald D. Libkuman, Libkuman, Ventura, Moon & Kekina* of counsel, with him on the brief) for defendants-appellees.

*Dennis E. W. O'Connor (David A. Ezra* with him on the brief, *Anthony, Hoddick, Reinwald & O'Connor* of counsel) for defendants-appellees Hawaiian Equipment Company and Castle & Cooke, Inc.

*John A. Roney* on the brief *(Goodsill, Anderson & Quinn* of counsel) for International Harvester Company.

*Nelson S. W. Chang,* Deputy Attorney General, on the brief *(George Pai,* Attorney General, of counsel) for State of Hawaii.

*Robert M. Rothwell,* Deputy Corporation Counsel *(Richard K. Sharpless,* Corporation Counsel, of counsel) for City and County of Honolulu.

### DISSENTING OPINION OF RICHARDSON, C.J.

I respectfully dissent.

I would reverse the lower court ruling that appellees as a matter of law owed no duty to refrain from the allegedly negligent infliction of mental harm because I believe that in this case the plaintiffs' interest in mental tranquility was entitled to legal protection against the defendants' conduct. Such a result is required by our holding in *Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509 (1970) (hereinafter cited as *Rodrigues),* wherein: "we recognize[d] that the interest in freedom from negligent infliction of serious mental distress is entitled to independent legal protection," and in which we held "that there is a duty to refrain from the negligent infliction of serious mental distress." *Rodrigues* at 174, 472 P.2d at 520.[1]

In the instant case my colleagues appear to be chiefly concerned with the issue of duty and its proper scope. In order to advance this discussion the concept of duty in the field of negligence must first be reviewed. In essence:

---

[1] See also Comment, *Negligently Inflicted Mental Distress: The Case for An Independent Tort,* 59 GEO. L. J. 1237, 1248 (1971) and *Negligent Infliction of Mental Distress: Reaction to Dillon v. Legg in California and Other States,* 25 HASTINGS L. J. 1248, 1255-56 (1974).

. . . [D]uty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another . . . .

. . . [W]hen negligence began to take form as a separate basis of tort liability, the courts developed the idea of duty, as a matter of some specific relation between the plaintiff and the defendant, without which there could be no liability. W. Prosser, *Law of Torts,* § 53 at 324-25 (4th ed. 1971).[2]

What then may be a "wrong" in relation to one person may not necessarily be a "wrong" as to someone else. While everyone agrees that duty must arise out of some "relation" between parties, no one has ever succeeded in defining what that relation is. Prosser, *Palsgraf Revisited,* 52 MICH L. REV. 1, 13 (1953). Thus:

These are shifting sands, and no fit foundation. There is a duty if the court says there is a duty; the law, like the Constitution, is what we make it. Duty is only a word with which we state our *conclusion* that there is or is not to be liability; *it necessarily begs the essential question* . . . .

. . . In the end the court will decide whether there is a duty on the basis of the *mores of the community,* "always keeping in mind the fact that we endeavor to make a rule in each case that will be *practical* and in keeping with the general understanding of mankind." (Emphasis added.) Prosser, 52 MICH L. REV. at 15.

I now turn to the issue central to the concerns of the majority, that of the delimitation of the proper scope of duty, *i.e.,* the question as to which particular plaintiffs is the duty owed. While this question may prove perplexing to some, I have no difficulty with it inasmuch as this court recently considered that complex issue in *Rodrigues* and remained unconvinced that the difficulty of defining the parameters of the defendant's liability is such as to preclude recognition of the plaintiff's claim. Accordingly we were of the opinion that

---

[2] See also, 2 F. HARPER and F. JAMES, *The Law of Torts,* § 18.1 at 1015 (1956).

limiting recovery to claims of serious mental distress was a sufficient safeguard against the prospect of infinite liability. Thus we held that:

> . . . serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case, *Rodrigues* at 173, 472 P.2d at 520,

and adopted the principle that where serious mental harm to plaintiff was a reasonably foreseeable consequence of defendant's act, defendant's liability would be imposed by the application of general tort principles. *Rodrigues* at 174, 472 P.2d at 520-21.

Such principle was reaffirmed in *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758 (1974) (hereinafter cited as *Leong*), wherein this court concluded that as to a plaintiff-witness a claim for relief from mental stress exists even in the absence of physical injury to the plaintiff and in the absence of a blood relationship between plaintiff and victim.

The court saw fit to repose its trust in the trier of fact to separate the "meritorious from the feigned" in accordance with traditional tort principles whereby the injured party would be required to prove the occurrence of the injury as well as its nature and severity.[3]

Then and now I believe that *Rodrigues* and *Leong* sufficiently defined the boundaries of liability by only allowing claims for *serious mental distress*. The facts on the record are particularly compelling and well establish the genuineness and seriousness of mental distress. This is not a situation which merely caused emotional trauma short of physical injury. What confronted plaintiffs' decedent was word of the massive tragedy causing the deaths of his daughter and his granddaughter, and serious injuries to another grandchild. There can be no doubt that said decedent suffered mental distress severe enough in impact so as to induce a fatal heart

---

[3] See generally, Koshiba, *Negligent Infliction of Mental Distress: Rodrigues v. State and Leong v. Takasaki*, 11 HAWAII B.J. 29, 31 (1974); Brott, *Negligent Infliction of Emotional Harm*, 7 HAWAII B. J. 148 (1971).

attack. I cannot contemplate a result which renders appellees' alleged negligence blameless at the outset and which summarily denies recovery by decedent's surviving widow and children.

It is on this crucial point that I must differ with the majority. The line that my colleagues choose to draw in the case at bar arbitrarily forecloses plaintiff's claim for negligent infliction of mental stress. Must we now retreat from what we thought to be good law as laid down by *Rodrigues* and *Leong*. I think not. It follows from our established case law that a negligent wrongdoer is liable for the consequences of his act. It is thus a deliberate policy decision that as between an innocent plaintiff and a negligent wrongdoer, that the latter must bear the loss. I would not, as my colleagues advocate, restrict the holdings of *Rodrigues* and *Leong* to the facts of each respective case, that is, to the contemporaneous experience of the alleged tortious event.

Confining liability to a specific sphere of contemporaneity, as proposed, is all too inflexible. In effect the majority reinstates a scheme of arbitrary distinctions as to where liability ends that we expressly rejected in *Rodrigues*. The artificiality of the majority's position is too readily apparent.

I disagree with such a result inasmuch as I concur with the view of negligence espoused by Justice Andrews, dissenting in the well known *Palsgraf v. Long Island R.R.*, 248 N. Y. 339, 162 N.E. 99 (1928) (hereinafter cited as *Palsgraf*). Justice Andrews summarized negligence as:

> . . . [N]ot merely a relationship between man and those whom he might reasonably expect his act would injure. Rather, [it is] a relationship between him and those whom he does in fact injure. If his act has a tendency to harm someone, it harms him a mile away as surely as it does those on the scene. *Palsgraf* at 349, 162 N.E. at 102.

On duty he observes that:

> Every one owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others. Such an act occurs. Not only is he wronged to whom harm might reasonably be expected to

214

result, but he also who is in fact injured, even if he be outside what would generally be thought the danger zone. *Palsgraf* at 350, 162 N.E. at 103.[4]

I believe that Andrews advanced the better reasoning in *Palsgraf*. The decision to limit the defendant's scope of duty is a policy choice which may be effectuated at too great a price.

As I perceive it:

The important question . . . is whether a person suffering from a real injury should be recompensed to the degree to which the law is capable of providing a remedy. The law is an ongoing and developing process . . . .

. . . Our law cannot hope to survive by stubborn adherence to decisions written for a different world . . . . 59 GEO. L. J. 1237, 1263 (1971).

---

[4] Prosser notes that Andrews met the issue of negligence head on. There are limitations on liability, he said, but they are limitations of proximate cause and remoteness of damage.

For an in-depth analysis of this opinion, see Prosser, 52 MICH. L. REV. at 6. See also Goodhart. *The Unforeseeable Consequences of a Negligent Act*, 39 YALE L. J. 449 (1930).