PATRICK F. COOTEY and YVONNE M. COOTEY, Respondents-Appellants, *v.* SUN INVESTMENT, INC., Respondent-Appellee, and COUNTY OF HAWAII, a municipal corporation, Petitioner-Appellee, Third-Party Plaintiff-Appellee, *v.* JHK TANAKA, INC., Respondent-Third-Party Defendant-Appellee

NO. 9168

(CIVIL NO. 6320)

MAY 15, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ

OPINION OF THE COURT BY WAKATSUKI, JJ.

This case comes before this court on petition for certiorari by the County of Hawaii from the Intermediate Court of Appeals (ICA).

The Appellants, Patrick and Yvonne Cootey, suffered damages when their house and lot were flooded five times between December 1978 and March 1980. The Cooteys believed that these floodings occurred as a result of the development of Unit I of the Puukapu Acres subdivision, mauka of their property. They brought suit for damages against Sun Investment, Inc., the developer of Unit I, JHK Tanaka, Inc. (Tanaka), the engineering firm which designed and prepared the plans for the subdivision, and the County of Hawaii (County) which granted final approval of the subdivision.

The Cooteys alleged: that Sun Investment owed them a duty to design and improve Puukapu Acres in compliance with the applicable County of Hawaii and State of Hawaii laws, rules and regulations; that Sun Investment breached that duty by negligently designing, constructing and maintaining the water drainage system; that Sun Investment owed a duty to them not to interfere with the natural flow of surface water over Unit I but breached that duty by negligently interfering with the natural flow of the surface water; that Tanaka owed them a duty to design and prepare the plans for the subdivision of Unit I in compliance with the laws, rules, regulations and directives of the County of Hawaii and of the State of Hawaii; that Tanaka breached that duty by negligently designing and preparing plans for the water drainage system of Unit I; that the County of Hawaii owed them a duty to administer and enforce the applicable laws, rules and regulations and directives of the County and the State of Hawaii; that the County breached that duty by negligently granting final approval of Unit I; that the County assumed control of management of the water drainage system of Unit I and therefore owed a duty to them to improve, repair and maintain the water drainage system for the protection of the Cooteys. The Cooteys prayed for damages to property and for emotional distress from each of the defendants.

The trial court directed verdicts in favor of all defendants and denied the Cooteys' motion for directed verdict at the conclusion of the trial. Upon appeal, the ICA reversed and remanded the case for jury determi-

nation.

The ICA agreed with the trial court that none of the defendants breached any statutory duty owed to the Cooteys, but held that all defendants owed the Cooteys a common law duty to have a drainage facility within Unit 1 which would not create an unreasonable risk of foreseeable harm to a neighboring landowner. Based on the evidence in the record, the ICA concluded that whether such duty was breached and whether that breach was the direct and proximate cause of the Cooteys' injuries are for the jury to determine.

The holding of the ICA as applied to the County is based on the principle that the County had a "special relationship" with Sun Investment, the developer, in that the County was required to prevent Sun Investment "from developing Puukapu Acres in such a manner as to cause damage to Cootey's property," and therefore, the "County was required to ensure that the subdivision and its facilities did not create an unreasonable risk of foreseeable harm to the Cooteys." Under the facts of this case, we disagree that the County had a special relationship with the developer such as would create a duty of care to the Cooteys. We further hold that under the facts of this case, the ICA's imposition upon the County of its duty of care owed to the Cooteys, is too expansive in light of public policy considerations versus liability and remedial considerations. We, therefore, affirm the trial court's judgment in favor of the County.

I.

"The basic . . . [principle] of governmental tort liability in Hawaii [now] is that the State and its political subdivisions shall be held accountable for the torts of governmental employees '. . . in the same manner and to the same extent as a private individual under like circumstances . . .' HRS § 662-2." *Salavea v. City and County,* 55 Haw. 216, 220, 517 P.2d 51, 54 (1973).

*First Insurance Co. of Hawaii v. International Harvester Co.,* 66 Haw. 185, 189, 659 P.2d 64, 67 (1983).

This principle, however, does not result in governmental liability for all negligent acts of government employees.

The State Tort Liability Act . . . did not create any cause of action where none existed before. The effect of the Act is to waive immunity from traditionally recognized common law causes of action in tort,

484

other than those expressly excluded. It was not intended to visit the sovereign with novel liabilities. (Citations omitted.)

*Figueroa v. State,* 61 Haw. 369, 384, 604 P.2d 1198, 1207 (1979). *See also Wilson v. Nepstad,* 282 N.W.2d 664, 676 (Iowa 1979) (McCormick, J., concurring specially) ("[T]he liability of the municipality for the torts of its officers, employees, and agents during the course of their employment . . . presupposes the commission of an actionable tort. It does not expand conduct which is deemed tortious."); *Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 541, 247 N.W.2d 132, 140 (1976) ("[N]egligence plus an unbroken sequence of events establishing cause-in-fact does not necessarily lead to a determination that the defendant is liable for plaintiff's injuries.").

Fundamental in any determination of liability for negligence is the existence of duty owed by the putative tortfeasor to the injured person. *First Insurance Co. of Hawaii v. International Harvester Co.,* 66 Haw. at 189, 659 P.2d at 67. Without a reasonable and proper limitation of the scope of duty of care owed by the County, the County would be confronted with an unmanageable, unbearable, and totally unpredictable liability. *See Kelley v. Kokua Sales & Supply, Inc.,* 56 Haw. 204, 209, 532 P.2d 673, 676 (1975).

II.

The question of whether a special relationship exists is another way of asking whether a duty of care exists to a third party. *Seibel v. City and County of Honolulu,* 61 Haw. 253, 602 P.2d 532 (1977).

"[I]t should be recognized that 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Waugh v. University of Hawaii,* 63 Haw. 117, 135, 621 P.2d 957, 970 (1980) (quoting *Kelley v. Kokua Sales & Supply, Ltd.,* 56 Haw. at 207, 532 P.2d at 675).

In determining whether there was a duty owed by the County to the Cooteys who suffered injury, our task is to balance the policy considerations supporting recovery by the injured party against those favoring a limitation of the County's liability. *First Insurance Co. of Hawaii v. International Harvester Co.,* 66 Haw. at 189, 659 P.2d at 67-68; *Ajiroji v. State,* 59 Haw. 515, 527, 583 P.2d 980, 988 (1978); *Kelley v. Kokua Sales & Supply, Ltd.,* 56 Haw. at 207, 532 P.2d at 675.

"Government is not intended to be an insurer of all the dangers of modern life, despite its ever-increasing effort to protect its citizens from peril." *Lorshbaugh v. Township of Buzzle,* 258 N.W.2d 96, 102 (Minn. 1977). Despite our expanding expectations of government action, *Ajiroji v. State,* 59 Haw. at 522 n.3, 583 P.2d at 985, we do not hold that government is liable for all injuries sustained by private persons as a result of governmental activity, even though doing so would spread the losses over the largest possible base, Van Alstyne, *Governmental Tort Liability: A Public Policy Prospectus,* 10 UCLA L. Rev. 463, 469 (1963) (hereinafter *Van Alstyne*).

In deciding whether a duty exists or not, we must "determine how far it is desirable and socially expedient to permit the loss distributing function of tort law to apply to governmental agencies, without thereby unduly interfering with the effective functioning of such agencies for their own socially approved ends." *Van Alstyne,* 10 UCLA L. Rev. at 469. Government entities are mandated by law to perform a variety of activities which have no counterpart in the voluntary activities of private persons. *Van Alstyne,* 10 UCLA L. Rev. at 468. Our system of separate but equal branches of government demands restraint on the part of the courts from reordering priorities and forcing reallocation of resources upon the other branches which make policy decisions in this regard. Comment, *A Unified Approach to State and Municipal Tort Liability in Washington,* 59 Wash. L. Rev. 533 (1984).

## III.

Whether there is a duty of care owed by the government tortfeasor to the injured party should be determined by an analysis of legislative intent of the applicable statute or ordinance.

Here, the acts undertaken by the County were done pursuant to the subdivision ordinance. In order to protect the health, welfare, and safety of the public at large, developers of private subdivisions are required to include certain improvements and meet certain standards pertaining to subdivisions. The permit process by which the County approves or disapproves the development of a proposed subdivision reflects an effort by government to require the developer to meet his responsibilities under the subdivision rules, regulations, and laws. We hold that the primary responsibility of providing an adequate and safe development rests with Sun Investment, the developer, and not with the County. *See*

*Wilson v. Nepstad,* 282 N.W.2d at 674 (McCormick, J., concurring specially); *Adams v. State of Alaska,* 555 P.2d 235, 247 (Alaska 1976) (Connor, J., dissenting).

The task of the government employees is to review the development plans submitted by the owner or developer to assess compliance with the law. While we do not condone negligence in the performance of this task, neither do we believe that the government employees are required to conduct their own engineering studies to ensure the validity and correctness of the developer's plans. To require the County to do so would place the County as an insurer of the adequacy of Sun Investment's plans, designs and installation of subdivision facilities.

Generally the budget and personnel allocations of a county government indicate that a county government's planning department's function is not intended to conduct in-depth engineering studies of its own to guarantee the adequacy of a developer's subdivision plans prior to the granting of an approval. If we hold that the County is liable for failure to discover an error in Sun Investment's subdivision plans that could only have been discovered by an independent engineering study, this court will, in effect, be impermissibly reallocating the County's resources, reordering its priorities, and setting policies that more rightly belongs to the legislative body of the County. *See O'Connor v. City of New York,* 58 N.Y.2d 184, 191, 447 N.E.2d 33, 36 (1983); Comment, *supra,* 59 Wash. L. Rev at 545. Further, the exposure to such liability would unduly lengthen the permit process, or could very well dissuade the County from enacting rules, regulations and laws applicable to proposed subdivisions and intended for the protection and welfare of the public, a result contrary to the public interest. *See Dinsky v. Town of Framingham,* 386 Mass. 801, 810, 438 N.E.2d 51, 56 (1982); *Stigler v. City of Chicago,* 48 Ill. 2d 20, 25, 268 N.E.2d 26, 29 (1971); *Adams v. State of Alaska,* 555 P.2d at 247-48 (Connor, J., dissenting); *Van Alstyne,* 10 UCLA L. Rev. at 469.

IV.

In this case, the county planning director and the chief of public works for the county outlined the process by which subdivision application is granted or denied. *See generally* Tr. of October 28, 1982, testimony of Edward Harada; Tr. of October 29, 1982, testimony of Sidney Fuke. In reviewing the initial applications for subdivision

approval, the various county agencies consider, *inter alia,* the effect of the proposed subdivision on drainage. If there is any suspicion that there might be drainage problems, further information, sometimes in the form of drainage maps and calculations, may be required. What specific information would be required varies from case to case.

As to drainage calculations, the public works chief testified that his staff reviews the developer's calculations to ensure that they conform to various codes and specified standards. Tr. of October 28, 1982 at 162-64.

Here, the construction drawings of the subdivision included drainage plans identifying the drainage culvert and ditch which were implemented in the actual development of the subdivision. There is no evidence that the county agency failed to review the submitted plans and the accompanying calculations.

In view of the public purpose of the subdivision ordinance and the resources allocated by the County to the agencies having the responsibility of reviewing and approving subdivision applications, we hold that the procedures used by the County in granting the approval for the subdivision of Unit I were reasonable. We further hold that there was no breach of any duty of care by the County in the application process utilized by the agencies in approving the subdivision and that the County was not required to do more to protect the Cooteys against damages from flood waters running over and through Unit I.

Although the record indicates that a large part of the trial was devoted to testimony on the issue of whether the subdivision of Unit I was responsible for the flooding of the Cooteys' home, the Cooteys failed to adduce any evidence that the County knew or should have known, based on facts, that the Cooteys' home was subject to flood damages occasioned by the development of Unit I. The trial court was correct in directing a verdict in the County's favor.

V.

The part of the ICA opinion entitled "County's Duty Under 'Special Relationship' with Developers," ___ Haw. App. ___, ___, 690 P.2d 1324, 1330-32 (1984), is reversed and the trial court's decision granting directed verdict in favor of the County is affirmed.

*Steven S. C. Lim,* Deputy Corporation Counsel, for petitioner-appellee, third-party plaintiff-appellee.

*Greg K. Nakamura (Rodsil & Nakamura)* for respondents-appellants.