**Electronically Filed
Supreme Court
SCWC-10-0000150
13-NOV-2014
07:45 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

GEOFFREY MOLFINO,
Petitioner/Plaintiff-Appellant,

vs.

CHRISTOPHER J. YUEN, in his capacity as Planning Director,
County of Hawai'i; COUNTY OF HAWAI'I,
Respondents/Defendants-Appellees.
_____

SCWC-10-0000150

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-10-0000150; CIV. NO. 07-1-0378)

NOVEMBER 13, 2014

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND POLLACK, JJ., AND
CIRCUIT JUDGE NAKASONE, IN PLACE OF ACOBA, J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

I.    **Introduction**

At issue in this appeal is whether this court should impose a duty of reasonable care on the Planning Department of the County of Hawai'i to a property owner, leading to potential negligence liability for damages allegedly sustained due to the Planning Department's failure to maintain all pertinent

correspondence in its property files at all times.  We hold that policy considerations counsel against the judicial creation of such a legal duty under the common law, and also hold that there is no basis under Hawai'i Revised Statutes ("HRS") Chapter 92F (the Uniform Information Practices Act (Modified), or "UIPA"), or Rule 1-8 of the Hawai'i County Planning Department Rules of Practice and Procedure, to impose negligence liability upon the Planning Department based on the temporary absence of a government record from its files.  We therefore affirm the judgment of the ICA, which affirmed the Circuit Court of the Third Circuit's[1] order granting the County's motion for summary judgment on Molfino's negligence claim.

## II.  Background

In this case, Molfino bought a piece of property on the Hamakua Coast of the Island of Hawai'i, identified by Tax Map Key ("TMK") Number 3-2-002-035, for $350,000 in June 2003.  Molfino wanted to create a subdivision on the property.  He visited the Planning Department and made copies of the property's TMK file.  Based on the property's zoning classification, Molfino understood that his property might consist of only two pre-existing lots.  Allegedly missing from the TMK file at that time was an April 2000 letter from a realtor to the former Planning Director, which requested a pre-existing lot determination, and

_____

[1]  The Honorable Greg K. Nakamura presided.

the former Planning Director's May 2000 response letter, which stated that the property consisted of six pre-existing lots.

Unaware of the prior six-lot determination, Molfino wrote a letter to the Planning Department in December 2003 requesting a pre-existing lot determination.  Based on the size of the property and the number of homes already built upon it, Molfino stated to the Planning Department that there was a possibility the property actually consisted of seven pre-existing lots. Christopher Yuen, the Planning Director, responded to Molfino's letter in June 2004.  Yuen's letter stated that Molfino's property consisted of two pre-existing lots.  Apparently, the April 2000 and May 2000 letters were also missing[2] from the Planning Department's TMK files when Yuen and his employee, Edward Cheplic, prepared the June 2004 letter.

While awaiting Yuen's response, Molfino entered into a contract to sell the property for $795,000 to Mikhail Pruglo, and the deal was closed in July 2004.  When Pruglo applied to subdivide the property, the May 2000 letter resurfaced.  The Planning Department honored the May 2000 determination that the property consisted of six pre-existing lots and granted Pruglo a

_____

[2]     The County does not dispute that these letters were temporarily missing from the TMK file.  Yuen testified in a deposition that the Planning Department's policy is to keep all correspondence related to a property in the property's TMK file "essentially forever."  There is no allegation in the complaint, and no evidence in the record, that anyone at the Planning Department intentionally or maliciously removed the April and May 2000 letters from the TMK file.

six-lot subdivision.  The Planning Director inadvertently excluded a sliver of land on the property in granting the six-lot subdivision approval, so he revised his final subdivision plat map to include the sliver of land as a seventh lot.  See Kellberg v. Yuen, 131 Hawai'i 513, 518, 319 P.3d 432, 437 (2014).

Molfino discovered that Yuen admitted making a mistake in the June 2004 letter, which initially determined that the property consisted of only two pre-existing lots.  Molfino then sued Yuen and the County of Hawai'i for negligence (among other claims, which are no longer at issue on certiorari), alleging that they breached a legal duty to use reasonable care in maintaining the TMK file, and that this breach caused Molfino monetary damages.  The County filed its Answer, raising as a defense that it owed no duty to Molfino.

The County later filed a motion for summary judgment on Molfino's negligence claim.  The County pointed out that Molfino based his negligence claim solely on a duty to maintain records purportedly contained in the Hawai'i County Planning Department Rules of Practice and Procedure, Rule 1-8 ("Rule 1-8"), which provides the following:

> **1-8 Public Records.**
> All public records shall be available for inspection by any person during established office hours unless public inspection of such records is in violation of any other state, federal, or county law; provided that, except where such records are open under any rule of court, the Corporation Counsel or Prosecuting Attorney may determine which records may be withheld from public inspection when

4

> such records pertain to the preparation of the prosecution or defense of any action or proceeding to which the County is or may be a party, or when such records do not relate to a matter in violation of law and are deemed necessary for the protection of the character or reputation of any person.
>
> Copies of records printed or reproduced for persons other than governmental agencies shall be given to any person, provided that the fees or costs prescribed in the Hawaii County Code are paid.

(Emphasis added). The County argued that Rule 1-8 mandates inspection of public records, not the maintenance of those records. The County then cited to Cootey v. Sun. Inv. Inc., 68 Haw. 480, 485, 718 P.2d 1086, 1090 (1986), for the proposition that the County "is not intended to be an insurer of all the dangers of modern life, despite its ever-increasing effort to protect its citizens from peril." Further, "[w]ithout a reasonable and proper limitation of the scope of duty of care owed by the County, the County would be confronted with an unmanageable, unbearable, and totally unpredictable liability." 68 Haw. at 484, 718 P.2d at 1090. The County concluded that imposing a legal duty upon it to maintain records that it has no duty to keep would impermissibly reallocate the County's resources (a task better suited to a legislative body); expose the County to potentially infinite liability; lengthen the permit process timeline; and dissuade the County from enacting subdivision rules, regulations, and laws, contrary to the public interest. Molfino counter-argued that "the duty to maintain

accurate records follows from [Rule 1-8's] duty to make public records available to any person."

The circuit court agreed with the County.  In an order granting the County's motion for summary judgment, the circuit court reasoned as follows:

> 1.  There is no express requirement in Rule § 1-8 of the Planning Department Rules of Practice and Procedure that the Planning Department records be kept in any particular condition.  Rather, this rule allows records to be open for public inspection.  It does not require that the records be maintained so that they can be relied upon by the general public in making major decisions;
>
> 2.  The Hawai'i County Code contains a formal mechanism for subdivision approval which identifies how to determine whether real property is subject to subdivision and under what conditions.  This determination should not be based upon a review of the Planning Department's records.  Whether or not real property is subject to subdivision and under what conditions based upon a review of Planning Department records only would be speculative, at best;
>
> 3.  Imposing a duty of care to maintain Planning Department records with reasonable accuracy invites unremitted liability.  For example, it would be too easy for a person to manufacture a case by reviewing the records and claiming reliance upon the status of the records for their actions or omissions;
>
> 4.  If a duty and liability is to be imposed upon the County to maintain Planning Department records with unerring accuracy, it should be imposed by a legislative body.  A legislative body is the proper entity to determine whether [to spend] the County's scarce resources on such a duty and is capable of providing additional economic resources which may be necessary;
>
> 5.  The Planning Department owes no duty to keep its records accurate and complete for persons who seek information regarding the degree to which real property may be capable of subdivision.

The circuit court subsequently entered judgment in favor of the County and against Molfino, and Molfino appealed.  Before the ICA, Molfino argued for the first time that the Planning Department's legal duty to maintain accurate, relevant, timely,

and complete records stems from HRS Chapter 92F. The County counter-argued that, even if the ICA were to consider HRS Chapter 92F, Molfino's argument would still fail. The County argued that HRS Chapter 92F simply requires access to those records a government agency has in fact maintained. See Nuuanu Valley Ass'n v. City & Cnty. of Honolulu, 119 Hawai'i 90, 97, 194 P.3d 531, 538 (2008) (citing State of Hawai'i Org. of Police Officers (SHOPO) v. Soc'y of Prof'l Journalists- Univ. of Hawai'i Chapter, 83 Hawai'i 378, 393, 927 P.2d 386, 401 (1996)).

In a summary disposition order, the ICA affirmed the circuit court's judgment, holding that the circuit court properly concluded "that the Planning Department did not have a statutorily-based duty to maintain its records with unerring accuracy." Molfino v. Yuen, CAAP-10-0000150 (App. Aug. 28, 2013) (SDO) at 5. The ICA noted that Molfino had not cited any cases "establishing a common law duty of this nature. . . ." Id. The ICA lastly concluded, "Strong policy considerations compel us to reject" Molfino's argument. Id. This case is now before us on certiorari review.

## III. Standard of Review

This court reviews a circuit court's grant of summary judgment de novo. See Hawai'i Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). "[S]ummary judgment is

7

appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Id.

**IV.  Discussion**

In order to prevail on a negligence claim, a plaintiff is required to prove all four of the necessary elements of negligence:

> (1) A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) A failure on the defendant's part to conform to the standard required:  a breach of the duty; (3) A reasonably close causal connection between the conduct and the resulting injury; and (4) Actual loss or damage resulting to the interests of another.

Takayama v. Kaiser Found. Hosp., 81 Hawai'i 486, 498-99, 923 P.2d 903, 915-16 (1996) (citation and brackets omitted)).  A prerequisite to any negligence action is the existence of a duty owed by the defendant to the plaintiff.  Lee v. Corregedore, 83 Hawai'i 154, 158, 925 P.2d 324, 328 (1996).  The existence of a duty is entirely a question of law.  See Hao v. Campbell Estate, 76 Hawai'i 77, 80, 869 P.2d 216, 219 (1994) (citation omitted).  Whether a duty exists is a "question of fairness that involves a weighing of the nature of the risk, the magnitude of the burden of guarding against the risk, and the public interest in the

proposed solution."  Id. (citation omitted).  This court has

chosen to impose tort duties reluctantly:

> In considering whether to impose a duty of reasonable care
> on a defendant, we recognize that duty is not sacrosanct in
> itself, but only an expression of the sum total of those
> considerations of policy which lead the law to say that the
> particular plaintiff is entitled to protection.  Legal
> duties are not discoverable facts of nature, but merely
> conclusory expressions that, in cases of a particular type,
> liability should be imposed for damage done.  In
> determining whether or not a duty is owed, we must weigh
> the considerations of policy which favor the appellants'
> recovery against those which favor limiting the appellees'
> liability.  The question of whether one owes a duty to
> another must be decided on a case-by-case basis.  However,
> we are reluctant to impose a new duty upon members of our
> society without any logical, sound, and compelling reasons
> taking into consideration the social and human
> relationships in our society.

McKenzie v. Hawai'i Permanente Med. Group, Inc., 98 Hawai'i 296,

301, 47 P.3d 1209, 1214 (2002) (citations omitted).

One such case in which this court declined to impose a duty

was Cootey, 68 Haw. 480, 718 P.2d 1086, a case which the County

relied upon in its moving papers, and which the circuit court

and ICA drew heavily from in ruling in the County's favor.  In

Cootey, plaintiff homeowners (the Cooteys) sued the County of

Hawai'i for negligently approving a subdivision, the development

of which allegedly caused flooding on the Cooteys' property.  68

Haw. at 482, 718 P.2d at 1088-89.  The Cooteys claimed that the

County owed them a "duty to administer and enforce the

applicable laws, rules and regulations and directives of the

County and the State of Hawaii. . . ."  68 Haw. at 482, 718 P.2d

at 1089.  This court disagreed, holding that such a duty was

9

"too expansive in light of public policy considerations versus liability and remedial considerations."  68 Haw. at 483, 718 P.2d at 1089.

In Cootey, this court noted that the determination of whether a duty exists requires a balancing of "the policy considerations supporting recovery by the injured party against those favoring a limitation of the County's liability."  68 Haw. at 484, 718 P.2d at 1090.  The court struck the balance in favor of limiting the County's liability.  68 Haw. at 483, 718 P.2d at 1089.  This court stated, "Government is not intended to be an insurer of all the dangers of modern life, despite its ever-increasing effort to protect its citizens from peril."  68 Haw. at 485, 718 P.2d at 1090.  Government should not be "liable for all injuries sustained by private persons as a result of governmental activity, even though doing so would spread the losses over the largest possible base."  Id. (citation omitted).  Government agencies must still be able to function effectively for their own "socially approved ends."  Id. (citation omitted).  This court held that the imposition of a duty in the Cooteys' situation would "reorder[] priorities and forc[e] reallocation of resources upon the other branches [primarily the legislative branch] which make policy decisions in this regard."  68 Haw. at 485, 486, 718 P.2d at 1090-91, 1091.  Specifically, "exposure to such liability would unduly lengthen the permit process, or

10

could very well dissuade the County from enacting rules,
regulations and laws applicable to proposed subdivisions and
intended for the protection and welfare of the public, a result
contrary to the public interest." 68 Haw. at 486, 718 P.2d at
1091 (citations omitted). In conclusion, this court held that
the imposition of a legal duty in Cootey would result in
"unmanageable, unbearable, and totally unpredictable liability"
for the County. 68 Haw. at 484, 718 P.2d at 1090.

We agree with the ICA that similar policy considerations in
the instant case counsel against the judicial creation of a
legal duty for potential negligence liability to be imposed upon
the County for an alleged failure to maintain the May 2000
letter in the Planning Department's TMK files. First, we agree
with the ICA that there appears to be no common law basis for
imposing a legal duty to maintain government records in complete
condition at all times. Second, we also agree with the ICA that
there is no statutory basis for imposing such a legal duty under
these circumstances.

In this case, before the circuit court, Molfino's sole
support for his claim that the County owed him a legal duty to
maintain accurate Planning Department records was Rule 1-8,
which requires only that "[a]ll public records shall be
available for inspection by any person," and contains no express
duty to maintain these records in "accurate, relevant, timely,

and complete" condition. We note, however, that Rule 1-8 is similar to HRS Chapter 92F in that both afford the public a right to inspect government records. HRS § 92F-11(a) (2012) states, "All government records are open to public inspection unless access is restricted or closed by law." Further, HRS § 92F-12(a)(15) (2012) requires each agency to "make available for public inspection and duplication during regular business hours . . . [i]nformation collected and maintained for the purpose of making information available to the general public . . . ." Although not an express record-keeping requirement under HRS §§ 92F-11(a) and -12(a)(15), HRS § 92F-2(2) (2012) provides that one of the "underlying purposes and policies" of HRS Chapter 92F is to "[p]rovide for accurate, relevant, timely, and complete government records. . . ." Thus, it is helpful to examine HRS Chapter 92F and cases construing that chapter to determine whether the County owes a legal duty to Molfino to maintain accurate, relevant, timely, and complete government records at all times.

Two key cases construing HRS Chapter 92F are Nuuanu Valley Ass'n, 119 Hawaiʻi 90, 194 P.3d 531, and SHOPO, 83 Hawaiʻi 378, 927 P.2d 386. In these cases, we held that HRS Chapter 92F "requires agencies to provide access to those records that are actually maintained." Nuuanu Valley Ass'n, 119 Hawaiʻi at 97, 194 P.3d at 538 (citing SHOPO, 83 Hawaiʻi at 393, 927 P.2d at

12

401).  In Nuuanu Valley Ass'n, this court further explained, "Whether the [records] are 'actually maintained' [by the government agency] depends on whether [the agency] 'chose[] to retain possession or control[]' of the records."  Id.  (citation omitted).

In this case, Yuen testified at his deposition that the Planning Commission's policy is that "any incoming or outgoing correspondence is supposed to be kept essentially forever" in a property's TMK files.  Therefore, the Planning Commission generally chooses to retain possession and control over letters like the 2000 letters.  Thus, under Nuuanu Valley Ass'n and SHOPO, the Planning Department failed to provide Molfino with access to the May 2000 pre-existing lot determination, which the Planning Department admittedly should have maintained in its TMK files but did not.

We must determine, however, whether this failure triggers a legal duty under tort law leading to potential negligence liability.  In examining the rest of Chapter 92F, however, we fail to discern any legislative intent to impose tort liability upon a government agency for its failure to maintain government records in accurate, relevant, timely, and complete condition at all times.  Legislative intent may be gleaned from reading "statutory language in the context of the entire statute and construing it in a manner consistent with its purpose."  Lingle

13

v. Haw. Gov't Emps. Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (citation omitted). Other provisions of HRS Chapter 92F speak to the consequences for violating the UIPA. HRS § 92F-17 (2012) provides the following:

> **Criminal penalties.** (a) An officer or employee of an agency who intentionally discloses or provides a copy of a government record, or any confidential information explicitly described by specific confidentiality statutes, to any person or agency with actual knowledge that disclosure is prohibited, shall be guilty of a misdemeanor, unless a greater penalty is otherwise provided for by law. (b) A person who intentionally gains access to or obtains a copy of a government record by false pretense, bribery, or theft, with actual knowledge that access is prohibited, or who intentionally obtains any confidential information by false pretense, bribery, or theft, with actual knowledge that it is prohibited [by] a confidentiality statute, shall be guilty of a misdemeanor.

HRS § 92F-16 (2012) provides immunity from liability as follows: "Anyone participating in good faith in the disclosure or nondisclosure of a government record shall be immune from any liability, civil or criminal, that might otherwise be incurred, imposed or result from such acts or omissions." Thus, HRS Chapter 92F only expressly imposes criminal penalties for intentional violations of confidentiality statutes.[3] HRS Chapter 92F, when read as a whole, does not reflect a legislative intent to impose tort liability for merely negligent acts or omissions of government agencies in the maintenance of public records. In

---

[3] We express no opinion as to whether HRS Chapter 92F imposes tort liability for bad faith disclosures or nondisclosures of government records, as bad faith nondisclosure was not alleged in this case, nor does the record show that the absence of the May 2000 letter from the Planning Department's TMK files was in bad faith.

other words, HRS Chapter 92F does not create a statutory legal duty, flowing from the Planning Department to Molfino, to maintain a property's TMK file in accurate, relevant, timely, and complete condition at all times, such that the Planning Department should be liable for negligence because the May 2000 letter was temporarily missing from the file.

## V.  Conclusion

We hold that neither Rule 1-8 of the Hawai'i County Planning Department Rules of Practice and Procedure nor HRS Chapter 92F provides a statutory basis for imposing negligence liability upon the Planning Department of the County of Hawai'i based on a breach of any duty to maintain its TMK files in accurate, relevant, timely, and complete condition at all times.  We hold that policy considerations counsel against the judicial creation of a legal duty under the common law, leading to negligence liability, under the circumstances present on the record in this case.  We therefore affirm the ICA's judgment on appeal, which affirmed the circuit court's order granting the County's motion for summary judgment.

Peter Van Name Esser
for petitioner

Laureen L. Martin
for respondents

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Karen T. Nakasone

