THOMAS E. HAYES, Trustee for WPMK Corporation, Plaintiff, and RALPH S. AOKI, Trustee for Paradise Palms Vacation Club, Plaintiff-Appellant, *v.* RUSSEL NAGATA, Acting Director, Department of Commerce and Consumer Affairs, State of Hawaii, Defendant-Appellee

NO. 11012

(CIV. NO. 81260)

DECEMBER 15, 1986

LUM, C.J., NAKAMURA, PADGETT, AND HAYASHI, JJ., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF WAKATSUKI, J., EXCUSED

OPINION OF THE COURT BY NAKAMURA, J.

Ralph S. Aoki, the Trustee in Bankruptcy for Paradise Palms Vacation Club (PPVC), "a non-profit corporation organized . . . under the laws of the State of Hawaii as an organization of timeshare unit owners," appeals from the order of the Circuit Court of the First Circuit dismissing his tort suit against the Director of the Department of Commerce and Consumer Affairs of the State of Hawaii. Concluding from a review of the record that no duty upon which liability could be premised was owed PPVC by the defendant in the particular circumstances, we affirm the dismissal.

I.

Time sharing plans, through which the use, occupancy, or possession of units in vacation homes, resort condominiums, or resort hotels circulates among various persons for periods of less than sixty days in a year for an occupant, have been regulated by the State since the enactment of Act 186 of the Session Laws of Hawaii (SLH) 1980. The regulatory act, subsequently codified as Hawaii Revised Statutes (HRS) chapter 514E, imposed burdens upon developers, acquisition agents, sales agents, and managers of time-share plans that included registration, the disclosure of relevant information, bonding, and the deposit of funds received from purchasers of time-share units in escrow accounts. And the offer or disposal of time-share units by a developer was interdicted unless the required disclosure statements were filed. *See* HRS §§ 514E-9 and 514E-10 (Supp. 1980). Developers of new time-share plans as well as those antedating the legislation were subject to the statute's stringent requirements. *See* HRS § 514E-14 (Supp. 1980). WPMK Corporation (WPMK), the developer of the PPVC plan since

1979, thus submitted an Application for Registration by Developer on December 31, 1980 to the Director of the Department of Regulatory Agencies as mandated by chapter 514E and the department's Rules Relating to Time Sharing.[1]

The application, however, was deficient in several respects; it did not include "description[s] of the time share units" and the "project and . . . pertinent provisions of the project instruments." *See* HRS § 514E-9(a)(3) and (4) (Supp. 1980).[2] That a special escrow account for the deposit of funds received from purchasers of time-share units, as required by § 16-106-34 of the Rules Relating to Time Sharing, had not been established and maintained was also evident from the application.[3] Despite these deficiencies, no action was taken by the Director to close PPVC's time-sharing operation.

WPMK and PPVC encountered financial difficulties thereafter, and both corporate entities sought relief under chapter 11 of the Bankruptcy Code in the United States District Court for the District of Hawaii. On January 24, 1984 Thomas E. Hayes, WPMK's Trustee in Bankruptcy, and Aoki commenced the instant action in the Circuit Court of the First Circuit against the Director, averring WPMK and PPVC had been

---

[1]The Department of Regulatory Agencies was redesignated as the Department of Commerce and Consumer Affairs by S.L.H. 1982, ch. 204, § 1.

[2]The relevant rule provision, § 16-106-3, provides for the "acceptance" of disclosure statements by the director; it reads in pertinent part:
   (a) Unless the transaction is exempt by law, a developer shall not offer, sell, transfer or otherwise dispose of a time share plan or unit whether it is sold or offered for sale in the State or out-of-state, unless a disclosure statement is filed with and accepted by the director.
The record does not disclose that WPMK's disclosure statement was ever accepted.

[3]Section 16-106-34 in pertinent part reads·
   *Developer and special escrow account.* (a) A developer shall establish and maintain a special escrow account with a bank, licensed escrow company or a trust company in this State. . . .
   (b) The developer shall place in the special escrow account not less than 30 per cent of all funds, . . . paid by the purchasers of time share ownership or use plans or submit to the director for approval a financial plan for the protection of the purchasers.
   .   .   .   .   .
   (d) If a developer elects to submit a financial plan to the director for approval, a developer shall furnish the director a certified statement of a summary of all underlying financial obligations of the time share plan   . . .

damaged by his negligence in administering HRS chapter 514E.[4] They alleged, *inter alia,* that the "disclosure statements filed by WPMK and received by the director failed to include material information required by Chapter 514E, H.R.S." and "the director failed to use due diligence and care in determining that all material representations made by WPMK in its disclosure statement were true." In the words of Aoki's counsel, the complaint, "in essence, alleged Defendant was negligent in allowing WPMK and PPVC to conduct timeshare operations despite their failure to comply with *statutory* requirements."

The defendant moved to dismiss the action on grounds that the circuit court lacked jurisdiction and the plaintiffs' complaint failed to state claims upon which relief could be granted, since they were "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state officer." *See* HRS § 662-15(1) (1976). Before the motion was heard, however, Aoki sought leave to amend the complaint to allege violations of departmental rules on the part of the Director in addition to the statutory violations pleaded earlier. The amendment was allowed after the dismissal of the claims asserted by Hayes on behalf of the bankrupt time-share developer[5] and those bottomed on provisions of HRS chapter 514E that were not in effect when the statutory violations allegedly occurred.

In material part the amended complaint averred "[t]he Director's actions . . . constitute[d] a failure to comply with his statutorily and regulatorily mandated duties in allowing WPMK to conduct timeshare sale operations after January 1, 1981 [despite its] failure to comply with . . . regulations concerning special escrow accounts and alternative plans"[6] and its "failure to provide a complete disclosure statement." As Aoki's counsel put it, the amended pleading "substitute[d] valid *regulatory* prohibitions for the *statutory* prohibitions erroneously relied upon initially." And "[t]he only arguably 'new' allegation [therein] concern[ed the Director's] negligence in allowing PPVC to conduct timeshare

---

[4]The plaintiffs were "not asserting any claims an individual member of PPVC might have resulting from that member's purchase of a time share interest from WPMK."

[5]Counsel for both Hayes and Aoki apprised the circuit court that they had "no objection to the dismissal of the claims of WPMK, the timeshare developer."

[6]*See supra* note 3.

operations given the failure of its special escrow account to meet regulatory requirements."

The defendant again moved for dismissal, asserting the suit was "barred by the statute of limitations in the State Tort Liability Act," the plaintiff failed "to allege sufficient facts to establish his standing to bring [the] action," and the action was "barred by the discretionary function exception to state tort liability." The circuit court dismissed the complaint with prejudice, and Aoki perfected his appeal to this court.

## II.

We are mindful, of course, that a complaint ought not be dismissed with prejudice "unless it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of its allegations." *Giuliani v. Chuck,* 1 Haw. App. 379, 385, 620 P.2d 733, 737 (1980) (citation omitted). Yet in this instance, "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Au v. Au,* 63 Haw. 210, 221, 626 P.2d 173, 181 (1981) (citations omitted).

## A.

Aoki's suit, as we noted earlier, sounds in negligence. Thus, we begin our analysis as we must "by examining the duty possibly owed by [the Director] to [PPVC], for it is fundamental that a negligence action lies only where there is a duty owed by the defendant to the plaintiff. *Hulsman v. Hemmeter Development Corp.,* 65 Haw. 58, 65, 647 P.2d 713, 719 (1982); *Namauu v. City & County,* 62 Haw. 358, 361, 614 P.2d 943, 945 (1980); *Ono v. Applegate,* 62 Haw. 131, 137, 612 P.2d 533, 538 (1980)." *Bidar v. Amfac, Inc.,* 66 Haw. 547, 551-52, 669 P.2d 154, 158 (1983). Whether "such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other" is a question of law "to be determined by reference to the body of statutes, rules, principles and precedents which make up the law." W.P. Keeton, *Prosser and Keeton on the Law of Torts* § 37, at 236 (5th ed. 1984). *See also Bidar v. Amfac, Inc.,* 66 Haw. at 552, 669 P.2d at 158; *Kelley v. Kokua Sales & Supply, Ltd.,* 56 Haw. 204, 207, 532 P.2d 673, 675 (1975); *Leong v. Takasaki,* 55 Haw. 398, 407, 520 P.2d 758, 764 (1974); *Rodrigues v. State,* 52 Haw. 156, 170, 472 P.2d 509, 518 (1970). Since the gravamen of Aoki's amended complaint consists of averments

that the Director was negligent in administering a law, we turn to the pertinent statute and the rules adopted to effectuate its purpose and implement its provisions.

The statute was enacted in 1980 to provide "regulatory oversight of time sharing in the State of Hawaii." Sen. Conf. Com. Rep. No. 8-80, in 1980 Senate Journal, at 942; Hse. Conf. Com. Rep. No. 37-80, in 1980 House Journal, at 1090. Time-share developers and operators like WPMK and PPVC, among others, were subjected to regulation thereunder to serve "the interests of the State, the time sharing industry, the purchasers of time share units and above all, the people of Hawaii." *Id.* The relationship established thereby between the defendant and the plaintiff was one of regulator and the object of regulation. The question then is whether this relationship gives rise to a duty the breach of which can be actionable by the plaintiff in the circumstances. Put another way, may the regulator be sued by the "regulated" for an alleged failure to compel the latter's strict compliance with the regulatory scheme?

### B.

Duty, we have said, "is a legal conclusion which depends upon 'the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' Prosser, Torts § 53 at 332 (3d ed. 1964)." *Rodrigues v. State,* 52 Haw. at 170, 472 P.2d at 518; *see also Leong v. Takasaki,* 55 Haw. at 407, 520 P.2d at 764. Thus, it is incumbent upon us "to weigh the considerations supporting recovery by [the plaintiff] against those favoring a limitation of the [State's] liability to determine whether there was a duty owed by the [Director] to [PPVC]." *First Insurance Co. of Hawaii v. International Harvester Co.,* 66 Haw. 185, 189, 659 P.2d 64, 67-68 (1983); *see also Kelley v. Kokua Sales & Supply, Ltd.,* 56 Haw. at 207, 532 P.2d at 675.

The plaintiff sought damages because "Defendant was negligent in allowing WPMK and PPVC to conduct timeshare operations despite their failure to comply with [the regulatory scheme]." In essence, Aoki claims PPVC was entitled to protection by the Director from its own noncompliance with the law. We perceive no policy considerations supporting the recovery of damages by the plaintiff under such circumstances.

The considerations favoring a limitation of the State's liability in this situation, on the other hand, need no belaboring. And since the State

Tort Liability Act "was not intended to visit the sovereign with novel liabilities," *Figueroa v. State,* 61 Haw. 369, 384, 604 P.2d 1198, 1207 (1979) (citations omitted), we would have to say there was no duty owed by the defendant to the plaintiff here and the suit was properly dismissed with prejudice.

Affirmed.

*Paul Alston (Shelby Anne Floyd* with him on the brief; *Paul, Johnson & Alston,* of counsel) for appellant.

*Norma Desantis Titcomb,* Deputy Attorney General, for appellee.