**Donald M. SHAW, Individually, etc., et al., Plaintiffs,**

v.

**SANTA MONICA BANK, Defendant.**

**SANTA MONICA BANK, Third–Party Plaintiff,**

v.

**MOON, O'CONNOR, TAM & YUEN, et al., Third–Party Defendants.**

**Civil No. 94–00793 FIY.**

United States District Court, D. Hawaiʻi.

March 26, 1996.

Kurt A. Gronau, Glenn N. Taga, Gronau, Choy & Taga, Honolulu, HI, for Plaintiffs Donald M. Shaw, Individually and as Trustee of the Donald M. Shaw Revocable Living Trust, and Janice K. Friend, Individually and as Trustee of the Janice K. Friend Revocable Living Trust.

Mark J. Bennett, Sheryl Cockett Medeiros, McCorriston Miho Miller Mukai, Honolulu, HI, for Defendant Santa Monica Bank.

James E. Duffy, Jr., Lee T. Nakamura, Ward F.N. Fujimoto, Fujiyama, Duffy & Fujiyama, Honolulu, HI, for Third–Party Defendants Moon, O'Connor, Tam & Yuen nka Tam, O'Connor & Henderson and Robert M. Yamauchi.

Allen I. Neiman, Law Office of Allen I. Neiman, Los Angeles, CA, for Third–Party Defendant Allen Neiman.

Grant K. Kidani, Philip S. Gerson, Kidani–Agard, Attorneys at Law, Honolulu, HI, for Counter–Defendants Grubbs & Collins now known as George Collins, Inc. and Camille J. Everett.

John E. Danley, Venise, CA, for Counter–Defendant John E. Danley.

Edmund Burke, William A. Bordner, Burke, Sakai, McPheeters, Bordner, Iwanaga & Estes, Honolulu, HI, for Counter–Defendants McCorriston, Miho, Miller, Mukai and D. Scott MacKinnon.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

YAMASHITA, United States Magistrate Judge.

On August 18, 1995, Defendant Santa Monica Bank ("Defendant") filed a motion for summary judgment. On October 5, 1995, Plaintiffs Donald M. Shaw and Janice K. Friend ("Plaintiffs") filed a memorandum in opposition to Defendant's motion for summary judgment. On June 13, 1995, the Honorable Alan C. Kay, Chief United States District Judge, upon consent of the parties then in the case, transferred this case to

Magistrate Judge Francis I. Yamashita for final disposition.[1] On October 23, 1995, arguments were heard by this Court regarding Defendant's motion for summary judgment and the matter was taken under advisement. For the reasons discussed below this Court GRANTS Defendant's motion for summary judgment.

### STATEMENT OF JURISDICTION

This action comes before this Court on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs are from Hawaii and Defendant is a California corporation. Therefore, complete diversity exists between the parties.

■ A federal court is bound to apply the substantive law of the state in which it sits. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Davis v. Metro Prod., Inc.,* 885 F.2d 515, 524 (9th Cir.1989). Therefore, this Court must apply Hawaii state law.

### STANDARD OF REVIEW

■ Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

■ Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing

1. This Court notes that as of March 1, 1996 not all of the third party Defendants joined subsequent to this transfer had consented to have trial

by a Magistrate Judge. Accordingly, all future dispositive motions will be heard by Judge Kay.

that there is a genuine issue for trial. *T.W. Elec.*, 809 F.2d at 630; Fed.R.Civ.P. 56(e). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Intel Corp. v. Hartford Accident & Indemnity Co.*, 952 F.2d 1551, 1558 (9th Cir.1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Preservation Soc. v. Watkins*, 754 F.Supp. 1450, 1455 (D.Haw.1991); Fed.R.Civ.P. 56(e). If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884, 110 S.Ct. 3177, 3186–87, 111 L.Ed.2d 695 (1990); *T.W. Elec.*, 809 F.2d at 630; Fed.R.Civ.P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir.1994); *Blue Ocean*, 754 F.Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Inferences must be drawn in favor of the nonmoving party. *T.W. Elec.*, 809 F.2d at 631. However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law. *Id.* at 631–32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *Bator v. State of Hawai'i*, 39 F.3d 1021, 1026 (9th Cir.1994) (citing *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988)).

### STATEMENT OF FACTS

On November 18, 1988, Plaintiffs purchased a parcel of real property located at 41–957 Laumilo Street, Waimanalo, Hawai'i ("Laumilo Property") together with John E. Danley and Sharon Y. Danley ("Danleys"). *See* Affidavit of Donald M. Shaw ("Shaw Affidavit"). Plaintiffs and the Danleys entered into a Co-tenancy Agreement on November 18, 1988 which provided that either party could sell, transfer, convey, pledge, mortgage or otherwise encumber their respective interests in the Laumilo Property without prior written consent of the other co-tenant. *See* Co-tenancy Agreement.

At the time the Co-tenancy Agreement was executed, the parties intended to be bound by its terms, but wished to modify certain terms, particularly the purchase price and the allocation of the monthly payments to be made by the parties. *See* Shaw Affidavit. The Plaintiffs and the Danleys had an understanding as to the purchase price and allocation of payments at the time the Co-tenancy Agreement was executed and intended to reduce the amendments to writing at a later date. *Id.* The amended agreement was never signed by the Danleys and the original Co-tenancy Agreement was never recorded by the parties. *See* Shaw Deposition at 53 and 83; Title Report.

In May of 1990, the Danleys borrowed $25,000.00 from Plaintiffs. *See* Shaw Deposition at 84. Plaintiffs knew at this time that the Danleys were experiencing severe financial difficulties. *Id.* at 132. Plaintiffs were aware that there were judgments and tax liens recorded against the Danleys' interest in the property. *Id.* Volume II at 30. Shortly thereafter, in November of 1990, the Danleys stopped making their share of the monthly mortgage payments, which amounted to approximately $1,500.00. *Id.* Volume I at 132.

On October 18, 1991, Plaintiffs recorded a deed conveying their interest in that proper-

ty to a revocable living trust. *See* Document 91–142321. This document was recorded after the time Plaintiffs claim they entered into the Co-tenancy Agreement. The documents specifically provided that the Plaintiffs, as co-tenants, had "full power and authority to sell, convey, exchange, partition, mortgage, lease, pledge, or otherwise deal with and dispose of" the undivided half interest in their "sole judgment and discretion." *Id.* The document did not describe or mention the Co-tenancy Agreement and also specifically stated that the Plaintiffs, as co-tenants, had full and "good right to sell and convey" their half interest and their half interest was "free and clear of all encumbrances." *Id.*

In November 1991, the Danleys attorney wrote to Plaintiffs stating that the Danleys considered the Co-tenancy Agreement which purported to restrict the Danleys' ability to mortgage their own interest in the property, null and void. *See* Shaw Deposition Vol. II at page 2. Correspondence was exchanged between the parties discussing the possibility of a partition or of Plaintiffs purchasing the Danleys' interest in the Laumilo Property. *See* Shaw Deposition.

In December 1991, the Danleys filed claims against Plaintiffs which were submitted to arbitration pursuant to the Co-tenancy Agreement. An arbitration award, dated June 29, 1992, outlined the steps to be taken towards Plaintiffs purchase of the Danleys' interest. *See* June 29, 1992 Arbitration Award. Plaintiffs applied for financing with Bank of Hawai'i. On March 22, 1993, Bank of Hawai'i approved Plaintiffs financing, contingent upon a number of factors, including a condition precedent that they pay off a specified portion of their outstanding debt. *See* Commitment Letter from Bank of Hawai'i dated March 23, 1993.

Plaintiffs then applied to the Circuit Court for confirmation of the arbitration award. Pursuant to title searches conducted by Bank of Hawai'i, Plaintiffs learned of two other mortgages and several judgments recorded against the Danleys' interest in the property. *See* Shaw Deposition. The amount of those encumbrances allegedly exceeded the purchase price provided for in the arbitration award. In June of 1993, the arbitration

award Plaintiffs had relied on was not confirmed by the State Court, because the award was not final as the Arbitrator had retained jurisdiction to resolve any disputes regarding the sale of the property. *See* June 29, 1992 Arbitration Award.

On October 15, 1992, Defendant entered into a mortgage with the Danleys. The mortgage was secured by the Danleys' undivided interest in the Laumilo Property, which Mortgage was in the principle amount of $500,000.00. Defendant issued and recorded the Mortgage with knowledge of the Co-tenancy Agreement between Plaintiffs and the Danleys. *See* Neiman Deposition at 76 and 83. Defendant issued and recorded the Mortgage on October 27, 1992. *See* Mortgage dated October 15, 1992. The arbitration between Plaintiffs and the Danleys then proceeded to a second arbitration hearing, which concluded in November of 1993 in a final award. *See* December 13, 1993 Arbitration Award. The award allowed the partition sale sought by Plaintiffs, but did not touch upon the interests of any of the mortgagees or lienholders, as the arbitrator concluded she had no jurisdiction over those parties. *Id.*

In February or March of 1994, the Danleys sued Plaintiffs in California for the same issues that had been resolved in arbitration. *See* Shaw Deposition, Vol. II at page 75. The case was eventually dismissed. *Id.* at 78.

In March of 1994, Plaintiffs filed an action in Hawaii State Court against the Danleys, Bank of Hawai'i, Defendant, and other lienholders, seeking partition sale of the property and other relief. *See* Complaint in Civil No. 94–1017–03. In that lawsuit, Plaintiffs sought to purchase the Danleys' interest and obtain title to the property free and clear of any of the recorded mortgages and liens. Plaintiffs received a final judgment in that case and were allowed to seek partition sale of the property. *Id.*

### STATEMENT OF CLAIMS

In the instant case, Plaintiffs sued Defendant claiming that Defendant failed to investigate and discover the Co-tenancy Agree-

ment between the Plaintiffs and Danleys. Plaintiffs allege that Defendant knowingly entered into and recorded a mortgage agreement that was in violation of the Co-tenancy Agreement. Plaintiffs claim monetary damages for loss of income, increased expenses, loss of opportunity to refinance their mortgage, emotional distress and mental anguish and punitive damages.

## DISCUSSION

### I. Plaintiffs' negligence claims

Generally, tort liability arises from common law recognition that certain obligations are owed by people to the community at large. These duties are not dependent upon an agreement between the parties. Rather, these duties reflect obligations or conduct between parties as their actions affect each other resulting in negligence or some other theory of recovery. It is fundamental that a negligence action lies only where there is a duty owed by the defendant to the plaintiff. *Wagatsuma v. Patch,* 10 Haw.App. 547, 879 P.2d 572 (1994); *Hayes v. Nagata,* 68 Haw. 662, 730 P.2d 914 (1986). Whether such a relationship exists between the parties that the community will impose a legal obligation upon one for the benefit is a question of law for the court to decide. *Id.* In making a determination of whether a legal duty exists, the court must look to the body of statutes, rules, principles, and precedents which make up the law. *Id.*

Where, as in this case, an action in federal court is based on diversity jurisdiction, a federal court is bound to apply the substantive law of the state in which it sits. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Davis v. Metro Prod., Inc.,* 885 F.2d 515, 524 (9th Cir.1989). Therefore, this Court must apply Hawai'i state law. In the absence of controlling state law, the court "must use its own best judgment in predicting how the state's highest court would decide the case." *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980).

In the present action, Plaintiffs have alleged that Defendant acted wilfully, intentionally, recklessly and/or negligently in failing to investigate and discover the Co-tenancy Agreement, and in entering into recording the mortgage with the Danleys. *See* Complaint, paragraphs 11 and 17. Thus, Plaintiffs are not claiming breach of contract but rather are alleging that Defendant owed some kind of legal duty to Plaintiffs not to enter into an agreement that would cause the Danleys to be in breach of the Co-tenancy Agreement. Basically, Plaintiffs are attempting to recover from Defendant under the theory that Defendant owed a fiduciary duty to Plaintiffs.

In order for the Plaintiffs to recover against the Defendant under a tort theory, a legal duty between the parties must exist. This Court can find no Hawaii case law which creates a legal duty under a theory of negligence between these Plaintiffs and the Defendant in this situation. The Hawaii Supreme Court in *Rodrigues v. State,* 52 Haw. 283, 472 P.2d 509 (1970) held that a duty is a legal conclusion which depends on the sum total of policy considerations that lead the law to determine that a particular plaintiff is entitled to protection. Before a duty is imposed, the court must weigh the policy in favor of protecting the plaintiffs against the policy in favor of limiting the defendant's liability under the circumstances. *Id.* The elements of the cause of action for negligence are (1) a duty recognized by a law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risk; (2) a failure of the defendant to conform to the standard required or breach of the duty; (3) a reasonably close causal connection between the conduct of the defendant and the resulting injury; and (4) an actual loss or damage resulting from defendant's actions. *Id.*

In the present case, Plaintiffs ask this Court to impose liability upon a bank for indirect injuries claimed by Plaintiff. However, Plaintiffs have failed to specify what duties were breached or to show that Defendant owed any fiduciary duties to Plaintiffs. Plaintiffs have failed to make any allegations or to present evidence from which a jury could reasonably find that any of the elements necessary to maintain a cause of action for negligence have been satisfied.

There is no evidence that Defendant owed a legal duty to Plaintiffs to look after Plaintiffs' interest or that Defendant failed to conform to a required legal standard. Having found no Hawaii case law on point, this Court has looked to other jurisdictions to find that generally no fiduciary relationship exists between a bank and its depositors or loan customers. *Weinberger v. Kendrick,* 698 F.2d 61 (2nd Cir.1982), *reh'g granted in part, denied in part,* Fed.Sec.Law Rep. (CCH) 99074 (2nd Cir.), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *Paradise Hotel Corp. v. Bank of Nova Scotia,* 842 F.2d 47, 53 (3rd Cir.1988); *F.C. Imports Inc. v. First National Bank of Boston,* 816 F.Supp. 78 (D. Puerto Rico 1993). It appears that no fiduciary relationship can exist between a lender and a third party unless special facts exist which give rise to such a duty. The evidence demonstrates that Plaintiffs have never had a relationship with Defendant. Plaintiffs are members of the general public who claim that they suffered injuries as a result of the contract that Defendant made with the Danleys. Without a relationship between Plaintiffs and Defendant, there can be no legal duty. Based upon these facts, Plaintiffs' allegations of negligence is untenable.

Accordingly, Plaintiffs have failed to demonstrate that their negligence claims have any factual basis and therefore, this Court hereby GRANTS Defendant's motion for summary judgment as to those claims.

## II. *Plaintiffs' intentional tort claims*

In *Burgess v. Arita,* 5 Haw.App. 581, 704 P.2d 930, (1985) reconsideration denied (1995), the Hawaii Intermediate Court of Appeals set out the requisite elements of tortious interference with contractual relationships. The elements of tortious interference with contractual relationship are (1) a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach the contract; (4) absence of justification on the defendant's part; (5) the subsequent breach of the contract by the third party; and (6) damages to the plaintiff. *Id.* 704 P.2d at 593.

The Hawai'i Supreme Court in *Weinberg v. Mauch,* 78 Hawai'i 40, 890 P.2d 277 (1995) held that it is "of the essence in an action for wrongful interference with contractual relationships that the plaintiff suffer damages as a consequence of the defendant's conduct, and these damages cannot be speculative or conjectural losses." In order to establish a cause of action against a third party for intentional interference with a contractual right, it must be shown that the third party acted with intent and legal malice, i.e. "the intentional doing of the harmful act without legal or social justification or excuse, or, in other words, the wilful violation of a known right." *Chow v. Alston,* 2 Haw.App. 480, 634 P.2d 430 (1981).

Applying the above criteria to the instant case, this Court finds that Plaintiffs' contention fails. Plaintiffs have failed to cite any evidence that Defendant intentionally induced the Danleys to breach the agreement with Plaintiffs. The evidence of this case indicates that the Danleys and Shaws entered into a Co-tenancy Agreement which was signed by the parties, however, it was never recorded with the Bureau of Conveyances of the State of Hawaii. Hawaii law requires that all conveyances of real estate located within the State of Hawaii be recorded in the Bureau of Conveyances. Hawai'i Revised Statutes ("H.R.S.") § 502–83. The underlining purpose of a recording statute is the element of notice to third parties. The penalty for non-recording is harsh. The statute states that every such conveyance not so recorded is void as against any mortgagee not having actual notice of the conveyance of the same real estate or any portion thereof whose conveyance is first duly recorded. *Id.* The 1991 recordation specifically provided that there were no encumbrances on the right to mortgage. This fact combined with the fact that the Co-tenancy Agreement was not enforceable draws the reasonable conclusion that there was no bar to a mortgage. Defendant is entitled to rely on recorded documents since Hawaii requires that all conveyances of real estate be recorded.

Defendant, however, has admitted to having knowledge of the Co-tenancy Agreement. Nevertheless, Defendant's position that the

Co-tenancy Agreement was not enforceable is valid. First, the Co-tenancy Agreement was never recorded pursuant to H.R.S. § 502–83 and the Amended Co-tenancy Agreement was never signed by the parties. Defendant is entitled to rely upon recorded documents purporting to encumber or restrict alienation of property. H.R.S. § 502–83. As a matter of law, the failure by Plaintiffs to record the Co-tenancy Agreement precludes them from asserting that Defendant had actual notice of said Agreement. Therefore, Defendant could have taken its chances in mortgaging the Laumilo Property. Second, the Danleys made a representation to Defendant that they had instructed Plaintiffs in November of 1991 that the Co-tenancy Agreement was null and void. *See* Shaw Deposition Volume II at page 2. The Danleys made this representation to Plaintiffs even before Defendant's mortgaged the Laumilo Property. Third, Plaintiffs on October 18, 1991 recorded a deed conveying their interest in the property to a revocable living trust. The Deed stated that the co-tenants had good right to sell the property. The Deed did not mention that in order to convey, there needed to be consent by the other co-tenant. Plaintiffs by their actions in conveying their portion of the property into a trust denied the existence of the Co-tenancy Agreement. Their act in derogation of the Co-tenancy Agreement indicates a possible breach of that Agreement by Plaintiffs. At the very least it indicates to third-parties, such as Defendant, that the Plaintiffs concluded that the Co-tenancy Agreement was not valid.

All of these facts combined indicate that the property was not encumbered in anyway. Therefore, Defendant's lien on the Laumilo property, even with the knowledge of the Co-tenancy Agreement did not intentionally induce the Danleys to breach a contract. It would be extraordinary to require Defendant to refrain from requiring the Danleys to mortgage because of a non-final, unrecorded oral agreement of questionable validity. While Defendant may have made a unwise business choice to loan money to the Danleys, their actions do not rise to the level of a wilful violation of a known right.[2]

Accordingly, Plaintiffs have failed to demonstrate that their claim for tortious interference with contract has any factual basis and therefore, this Court hereby GRANTS Defendant's motion for summary judgment as to that claim.

### CONCLUSION

For the foregoing reasons, this Court GRANTS Defendant's motion for summary judgment. This Court finds that Plaintiffs' claims of negligence and tortious interference of contract have no factual basis. Having addressed these issues, the remaining issues raised by Defendant in the motion for summary judgment are moot. Accordingly, based on the foregoing this Court dismisses all claims against Defendant.

IT IS SO ORDERED.

---

2. The First Circuit Court, State of Hawai'i, in Civil No. 94–1017–03 confirmed the purchase of subject property by Plaintiffs free and clear of all liens, including any interest by the Danleys or Defendant. This Court believes that the decision by the State Court illustrates the risk that Defendant took in requiring the Laumilo property to be security for the Danleys loan. As a result of the State Court's decision, Defendant lost its security for the Danley loan. Defendant has already paid a severe penalty for taking the risk and making the loan to the Danleys.